# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38829

WILLIAM SHAWN GOODSPEED and
SHELLEE BETH GOODSPEED,

    Plaintiffs-Respondents,

v.

ROBERT D. SHIPPEN and JORJA
SHIPPEN,

    Defendants-Appellants.

Idaho Falls, May 2013 Term

2013 Opinion No. 79

Filed: June 25, 2013

Stephen Kenyon, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of
Idaho, Jefferson County. Hon. Gregory S. Anderson, District Judge.

The district court's order granting a new trial on the Goodspeeds' claim for
breach of the implied warranty of habitability is <u>affirmed</u>. The district court's
decision denying the Shippens' request for attorney fees at trial is <u>affirmed</u>.

Dunn Law Offices, PLLC, Rigby, for appellants. Robin D. Dunn argued.

Nelson Hall Parry Tucker, P.A., Idaho Falls, for respondents. Weston S. Davis
argued.

_____

HORTON, Justice.

Shawn and Shellee Goodspeed purchased a home from Robert and Jorja Shippen via
warranty deed. After the basement of the home flooded, the Goodspeeds filed suit against the
Shippens, alleging breach of the implied warranty of habitability. The district court denied the
Goodspeeds' request for a jury instruction on the requirements for disclaiming the implied
warranty of habitability and the case went to trial. The jury returned a verdict in favor of the
Shippens, and the Goodspeeds moved for judgment notwithstanding the verdict or, alternatively,
for a new trial, arguing the disclaimer of the implied warranty of habitability in the purchase and
sale agreement was ineffective because it was not conspicuous. The district court granted a new
trial after determining it had excluded the disclaimer instruction based upon its incorrect belief

1

that the Goodspeeds had actual knowledge of the disclaimer. The Shippens appeal, arguing that the instruction was properly excluded. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2005, Robert and Jorja Shippen purchased real property in Rigby, Idaho, and constructed a home on the lot. In June 2007, William Shawn Goodspeed (Shawn) and Shellee Beth Goodspeed entered into a real estate purchase and sale agreement (PSA) with the Shippens, under which the Shippens agreed to sell the home to the Goodspeeds. The property was eventually transferred to the Goodspeeds via warranty deed. Because the area was known for groundwater flooding, the Shippens agreed to install a leaching system and drain field on the walkout basement side of the property.

The Goodspeeds moved in and began to experience problems with flooding. According to Shawn's testimony, groundwater saturated the area outside the home's walkout basement in September 2007, and came within an inch of the basement floor slab. Shawn testified there was flooding again in September 2008, in which the water actually entered the house and damaged the carpet and walls. The Goodspeeds filed an action against the Shippens in January 2009, alleging several causes of action, including a claim that the Shippens breached the implied warranty of habitability. Prior to trial, the Goodspeeds requested a jury instruction on the requirements for disclaiming the implied warranty of habitability. The trial court declined to give the instruction, and the jury returned a verdict in favor of the Shippens on all causes of action. The Goodspeeds timely filed a motion for a judgment notwithstanding the verdict or, alternatively, for a new trial. They contended, among other issues, that the district court improperly excluded the requested jury instruction on the requirements for disclaiming the implied warranty of habitability.

The district court granted the Goodspeeds a new trial solely on their claim for breach of the implied warranty of habitability. The court explained that it initially declined to give the instruction because the "Shippens' counsel erroneously represented to this Court that [the] Goodspeeds acknowledged having read and understood" the disclaimer, which led the court to believe the Goodspeeds had actual notice of the disclaimer of the implied warranty of habitability. However, in considering the Goodspeeds' motion, the district court reviewed the trial testimony and concluded the evidence did not support a finding that the Goodspeeds had actual notice because it did not "clearly show [the] Goodspeeds were aware of and agreed to" the

2

disclaimer and its consequences. The court also reviewed the requirements for making a valid contractual disclaimer of the implied warranty of habitability and determined that the language in the PSA did not satisfy those requirements because it was merely boilerplate language and not conspicuous. Consequently, the court determined it had erred in declining to give an instruction regarding the requirements for disclaiming the implied warranty of habitability and that the Goodspeeds were therefore entitled to a new trial on that issue.

After the verdict was rendered, the Shippens sought attorney fees pursuant to Idaho Code § 12-120(3) and also under the terms of the PSA. The district court issued a separate decision explaining that it would not award attorney fees until the claim for breach of the implied warranty of habitability was resolved and final judgment was entered. The Shippens timely appeal, arguing that the district court erred in granting a new trial because the Goodspeeds had actual notice the warranty was disclaimed and therefore no instruction was necessary. They also contend the district court erred in declining to award fees because, based upon the jury's verdict, they were the prevailing party.

## II. STANDARD OF REVIEW

In *Munns v. Swift Transp. Co., Inc.*, this Court set forth the standard it applies when reviewing a motion for a new trial:

> On appeal, the Supreme Court will not reverse a trial court's order granting or denying a motion for new trial unless the court has manifestly abused the wide discretion vested in it. While the Supreme Court must review the evidence, it is not in a position to "weigh" the evidence as is the trial court. *Jones v. Panhandle Distribs., Inc.*, 117 Idaho 750, 792 P.2d 315 (1990). In considering a motion for a new trial, the trial judge is not required to view the evidence in a light most favorable to the verdict winner. *Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986).

138 Idaho 108, 110, 58 P.3d 92, 94 (2002). "The district court's determination of prevailing party status for the purpose of awarding attorney fees and costs is within the court's sound discretion, and will not be disturbed on appeal unless there is an abuse of discretion." *Hobson Fabricating Corp. v. SE/Z Const., LLC*, 154 Idaho 45, ___, 294 P.3d 171, 175 (2012) (citing *Jorgensen v. Coppedge,* 148 Idaho 536, 538, 224 P.3d 1125, 1127 (2010)).

This Court's test to determine whether a trial court has abused its discretion consists of three parts: "(1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any

3

legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason." *Schmechel v. Dillé*, 148 Idaho 176, 179, 219 P.3d 1192, 1195 (2009) (quoting *Dyet v. McKinley,* 139 Idaho 526, 529-30, 81 P.3d 1236, 1239-40 (2003)).

## III. ANALYSIS

**A. The district court did not abuse its discretion in granting the Goodspeeds' motion for a new trial.**

The district court granted the Goodspeeds' alternative motion for a new trial based upon its determination that it erred in failing to give an instruction regarding disclaimer of the implied warranty of habitability. The Shippens argue the district court abused its discretion, contending that the evidence shows the Goodspeeds had actual knowledge that the implied warranty of habitability did not bind the parties to this agreement and thus no instruction on disclaimer was necessary. The Shippens also contend that the district court misapplied the standard for determining whether the contractual disclaimer of the implied warranty of habitability was effective. We hold that the district court correctly determined that it erred in failing to give an instruction on the requirements for disclaiming the implied warranty of habitability and that its failure to give the instruction may have prejudiced the Goodspeeds.

Under the Idaho Rules of Civil Procedure, a trial court may order a new trial if it determines that legal error occurred during the trial.[1] I.R.C.P. 59(a)(7). However, the court is not to consider any errors that do not "affect the substantial rights of the parties." *Schmechel*, 148 Idaho at 180, 219 P.3d at 1196 (quoting I.R.C.P. 61). In cases where the error in law was prejudicial, "the district court has a duty to grant a new trial, even though the verdict is supported by substantial and competent evidence." *Id.* (citing *Craig Johnson Const., L.L.C. v. Floyd Town Architects, P.A.*, 142 Idaho 797, 801, 134 P.3d 648, 652 (2006)). Consequently, if an error at trial prejudices a party, the district court must grant a new trial.

In its order granting a new trial on the implied warranty of habitability claim, the district court recognized its discretion to order a new trial under Idaho Rule of Civil Procedure 59(a). Thus, the question is whether the district court's decision to order a new trial was consistent with applicable legal standards and reached by an exercise of reason.

The trial court determined that its decision to exclude the Goodspeeds' requested instruction on the requirements for validly disclaiming the implied warranty of habitability was

---

[1] Rule 59(a) provides in relevant part: "A new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons: . . . 7. Error in law, occurring at the trial."

an error that "may have been prejudicial" and the Goodspeeds were therefore entitled to a new trial on the issue of breach of the implied warranty of habitability. The first inquiry then is whether the district court erred in failing to give an instruction.

***1. The district court correctly determined that it erred in declining to give an instruction on the requirements for disclaiming the implied warranty of habitability.***

"This Court exercises free review over the correctness of jury instructions." *Schmechel*, 148 Idaho at 185, 219 P.3d at 1201 (citing *Craig Johnson Const., L.L.C.*, 142 Idaho at 800, 134 P.3d at 651). If a party requests an instruction on a theory, a trial court must give the instruction if the "theory is supported by any reasonable view of the evidence." *Mackay v. Four Rivers Packing Co.*, 151 Idaho 388, 392, 257 P.3d 755, 759 (2011) (quoting *Vanderford Co. v. Knudson*, 144 Idaho 547, 555, 165 P.3d 261, 269 (2007)). But, "[a]n instruction is not to be given if it is an erroneous statement of the law, not supported by the facts, or adequately covered by the other instructions." *Schmechel*, 148 Idaho at 185, 219 P.3d at 1201 (quoting *Vanderford,* 144 Idaho at 555, 165 P.3d at 269). Further, the "instructions are to be viewed as a whole in determining whether the jury was properly and adequately instructed on the applicable law." *Id.*

Here, one of the Goodspeeds' legal theories was that the Shippens breached the implied warranty of habitability. In support of that theory, the Goodspeeds requested an instruction that explained the requirements for disclaiming the implied warranty in a contract. Therefore, if the Goodspeeds' theory is supported by a reasonable view of the facts, the district court erred in failing to give the instruction.

This Court has held that the implied warranty of habitability protects homebuyers against "major defects which render the house unfit for habitation, and which are not readily remediable." *Tusch Enterprises v. Coffin*, 113 Idaho 37, 47-48, 740 P.2d 1022, 1032-33 (1987) (quoting *Bethlahmy v. Bechtel*, 91 Idaho 55, 68, 415 P.2d 698, 711 (1966)). A party may disclaim the implied warranty of habitability by contractual provision. However, this Court has held that in doing so:

> [O]ne seeking the benefit of such a disclaimer must not only show a conspicuous provision which fully discloses the consequences of its inclusion but also that such was *in fact* the agreement reached. The heavy burden thus placed upon the builder is completely justified, for by his assertion of the disclaimer he is seeking to show that the buyer has relinquished protection afforded him by public policy. A knowing waiver of this protection will not be readily implied.

5

*Id.* at 45-46, 740 P.2d at 1030-31 (quoting *Crowder v. Vandendeale*, 564 S.W.2d 879, 881 n.4 (Mo.1978)). The *Tusch* Court also explained that under this rule, "boilerplate clauses, however worded, are rendered ineffective, thereby affording the consumer the desired protection without denying enforcement of what is in fact the intention of both parties." *Id.* at 46, 740 P.2d at 1031 (quoting *Crowder*, 564 S.W.2d at 881). In *Tusch*, the Court noted that the disclaimers at issue did not meet these standards because they consisted of "only general language stating there are no warranties other than those contained within its four corners" and as a result the party asserting waiver did not meet its "burden of proving that [the implied warranty] has been *knowingly* waived." *Tusch*, 113 Idaho at 46, 740 P.2d at 1031.[2] Thus, a valid disclaimer of the implied warranty of habitability must be conspicuous, contain an explanation of its effect, and demonstrate that the parties have knowingly waived the implied warranty.

Here, a reasonable view of the facts supports the Goodspeeds' request for an instruction on the standards for disclaiming the implied warranty of habitability. The Shippens were aware the Goodspeeds intended to occupy the home and the basement of the home experienced significant and repeated flooding.

In this case, the disclaimer clause upon which the Shippens rely provides:

> 32. ENTIRE AGREEMENT: This agreement contains the entire Agreement of the parties respecting the matters set forth and supersedes all prior Agreements between the parties respecting said such matters. No warranties, including, without limitation, any warranty of habitability, agreements or representations not expressly set forth herein shall be binding upon either party.

The disclaimer is contained within a clause that is of the font type and size as the surrounding text. Nothing in the location, spacing, or margins of the clause set it apart from the other terms of the contract. The only part of the clause that could be considered to be in a different type style is the caption, which is in all capitals. However, that caption, "ENTIRE AGREEMENT," is the same as all of the other numbered captions and does not alert the reader that it contains a warranty disclaimer.

---

[2] The Shippens argue that *Tusch* is distinguishable because the disclaimers in that case did not specifically mention the implied warranty of habitability, while the provision in this case does. However, the requirement set forth in *Tusch* is the existence of a knowing waiver by proof that the parties actually agreed to the term. *Tusch*, 113 Idaho at 46, 740 P.2d at 1031. In *Tusch*, the failure of the provisions at issue to mention the implied warranty of habitability was merely the reason they could not constitute a "knowing waiver"–and thus could not be a valid disclaimer under the rule–not a restriction of the rule to those kinds of provisions. Therefore, while the content of the disclaimers at issue was a factor in the Court's decision in *Tusch*, the case is not thereby distinguishable.

According to the Merriam-Webster Dictionary, "conspicuous" means "obvious to the eye or mind; attracting attention." Merriam-Webster Dictionary, www.merriam-webster.com/dictionary/conspicuous (last accessed June 10, 2013). Black's Law Dictionary, defines the term as "clearly visible or obvious," and notes that in the case of a printed clause, "the size and style of the typeface" are typically determinative of whether the clause is conspicuous. Black's Law Dictionary 351 (9th ed. 2009). While the Uniform Commercial Code (UCC) does not apply in this case, its definition is also useful because it is specifically related to the meaning of the word as applied to contract terms: "'Conspicuous,' with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." I.C. § 28-1-201 (10). The UCC definition also includes some examples of ways a term can be conspicuous:

> (A) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
> (B) Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks that call attention to the language.

*Id.* In a case subject to the UCC definition, this Court held that a disclaimer was conspicuous, even though it was in smaller print than the rest of the contract, because it was located "above the body of the contract," which "amplifie[d] its visibility and increase[d] the likelihood of discovery," and was "located in the middle of the front page of the contract and is set off by indentation" and thus, would have been noticed by a reasonable person. *Clements Farms, Inc. v. Ben Fish & Son*, 120 Idaho 185, 189, 814 P.2d 917, 921 (1991). The common trait demonstrating a term's conspicuousness in these definitions, and in this Court's application, is something that causes the disclaimer to stand out in contrast from the rest of the contract. Viewing the PSA in isolation, the district court properly determined that it erred by failing to instruct the jury regarding the requirements for an effective contractual disclaimer of the implied warranty of habitability.

The Shippens also argue that no instruction was necessary because the Goodspeeds had actual notice of the disclaimer provision and its effect, which satisfies the requirement of

"knowing waiver" of the implied warranty.[3] We are unable to conclude that the evidence presented at trial conclusively demonstrates that the Goodspeeds had actual notice of the disclaimer. Shawn Goodspeed testified that he did not personally write all the terms in the PSA and that the agreement was "kind of a cookie cutter form used for these type of documents." He also testified that Stoor, the Goodspeeds' real estate agent, had explained the PSA to him. However, the part of Shawn's testimony related specifically to the disclaimer clause focused on the meaning of the word "supersedes" and does not expressly indicate that the effect of the disclaimer was brought to the Goodspeeds' attention. The real estate agent also testified regarding his discussion with the Goodspeeds regarding the PSA:

> **Q:** As part of your commission and your job as a realtor, do you go over this purchase and sale agreement with your client?
> **A:** Yes.
> **Q:** And you try to explain all of the details of the contract?
> **A:** Yes.

But when the questioning turned specifically to the disclaimer clause, the questioning again focused on the meaning of the word "supersedes" and whether prior understandings about warranties were enforceable. While it appears the contract was generally explained to the Goodspeeds, the evidence does not unambiguously show that the Goodspeeds had actual notice of the effect of the disclaimer of the warranty of habitability such that they knowingly waived its protection. We therefore hold that the district court properly determined that it erred in failing to give an instruction on the requirements for disclaiming the implied warranty of habitability.

### 2. The error in failing to give an instruction was prejudicial to the Goodspeeds.

The next inquiry is whether the error was prejudicial. "An erroneous jury instruction is prejudicial when it could have affected or did affect the outcome of the trial." *Garcia v. Windley*, 144 Idaho 539, 542-43, 164 P.3d 819, 822-23 (2007). (citing *Burgess v. Salmon River Canal Co. Ltd.*, 119 Idaho 299, 306, 805 P.2d 1223, 1230 (1991)); *see also Munns v. Swift Transp. Co.*, 138 Idaho 108, 111-12, 58 P.3d 92, 95-96 (2002) (citing *Salinas v. Vierstra,* 107 Idaho 984, 695 P.2d 369 (1985)) ("Where an erroneous jury instruction may have misled the jury and prejudiced a

---

[3] The district court initially declined to give the instruction because the "Shippens' counsel erroneously represented to this Court that [the] Goodspeeds acknowledged having read and understood" the disclaimer, which led the court to believe the Goodspeeds had actual notice of the disclaimer of the implied warranty of habitability. However, in considering the Goodspeeds' motion, the district court reviewed the trial testimony and concluded the evidence did not support a finding that the Goodspeeds had actual notice because it did not "clearly show [the] Goodspeeds were aware of and agreed to" the disclaimer and its consequences.

party, the error is not harmless."). Thus, if a trial court errs in its instructions to the jury and the error could have affected the outcome of the trial, the trial court must grant a party's motion for a new trial.

In this case, the jury was asked to answer the following question on the special verdict form: "Did Robert and/or Jorja Shippen breach the implied warranty of habitability?" The jury answered "no" as to both of the Shippens. As the district court noted, at least two explanations exist for the jury's verdict: The jury could have determined the facts did not support a finding that the implied warranty of habitability was breached; or it could have determined that there was no breach because the implied warranty of habitability was disclaimed. If the jury determined there was no breach because the warranty was disclaimed, it should have been instructed on the requirements for a valid disclaimer, as the Goodspeeds requested. The court exercised reason in concluding that, absent that instruction, it could not "rule out the possibility that the proposed jury instruction may have provided needed guidance to the jury regarding the existence and/or waiver of the implied warranty of habitability. Failure to give the instruction may have been prejudicial to [the] Goodspeeds." Thus, the district court recognized its discretion, acted in accord with the legal standards applicable and exercised reason in applying those standards to reach its decision that the error was prejudicial. We therefore affirm the district court's order granting a new trial on the claim for breach of the implied warranty of habitability.

**B. The district court properly declined to award attorney fees below.**

Upon granting the Goodspeeds' motion for a new trial on the claim for breach of the implied warranty of habitability, the district court determined that it would defer ruling on the Shippens' request for attorney fees and costs until final judgment was entered in the case. The Shippens argue that the terms of the PSA and Idaho Code § 12-120(3) entitle the prevailing party to an award of attorney fees and, based upon the jury's verdict, they were the prevailing party and thus are entitled to attorney fees. The Goodspeeds reply that the district court correctly deferred the decision because the Shippens are not yet the prevailing party and may never become the prevailing party, pending the new trial on the breach of implied warranty claim.

We hold that the district court correctly held that any determination as to a prevailing party is premature until the Goodspeeds' claim of breach of the implied warranty of habitability is resolved. *Hillside Landscape Const., Inc. v. City of Lewiston*, 151 Idaho 749, 754, 264 P.3d

9

388, 393 (2011) (citing *City of McCall v. Buxton,* 146 Idaho 656, 667, 201 P.3d 629, 640 (2009)).

For guidance on remand, we observe that I.C. § 12-120(3) does not apply to this action. That statute provides: "In any civil action . . . and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." This Court has held that a prevailing party is entitled to attorney fees under that statute "if a 'commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover.'" *Carrillo v. Boise Tire Co., Inc.*, 152 Idaho 741, 755, 274 P.3d 1256, 1270 (2012) (quoting *Blimka v. My Web Wholesaler, LLC,* 143 Idaho 723, 728, 152 P.3d 594, 599 (2007)). A commercial transaction is any transaction other than transactions "for personal or household purposes." I.C. § 12-120(3). Additionally, the Court has held that "in order for a transaction to be commercial, each party to the transaction must enter the transaction for a commercial purpose." *Carrillo*, 152 Idaho at 756, 274 P.3d at 1271 (citations omitted). As this transaction lacks the required symmetry of commercial purpose, I.C. § 12-120(3) does not apply.

## C. Attorney fees on appeal.

The Shippens request attorney fees on appeal under Idaho Code §§ 12-120(3) and 12-121 and under the terms of the PSA. Because the Shippens have not prevailed on appeal, they are not entitled to an award of attorney fees. *O'Shea v. High Mark Dev., LLC*, 153 Idaho 119, 132, 280 P.3d 146, 159 (2012).

The Goodspeeds also seek attorney fees on appeal pursuant to Idaho Code § 12-121. This Court has explained the application of this statute:

> An award of attorney fees under Idaho Code § 12-121 is not a matter of right to the prevailing party, but is appropriate only when the court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation. When deciding whether attorney fees should be awarded under I.C. § 12-121, the entire course of the litigation must be taken into account and if there is at least one legitimate issue presented, attorney fees may not be awarded even though the losing party has asserted other factual or legal claims that are frivolous, unreasonable, or without foundation.

*Michalk v. Michalk*, 148 Idaho 224, 235, 220 P.3d 580, 591 (2009) (citing *McGrew v. McGrew,* 139 Idaho 551, 562, 82 P.3d 833, 844 (2003)). Thus, if any legitimate issue is presented to the Court on appeal, it cannot award attorney fees to the prevailing party.

10

Here, the Shippens made at least two legitimate arguments. The first is the argument that *Tusch* is distinguishable because the disclaimers in that case did not specifically mention the implied warranty of habitability, while the provision in this case specifically refers to it. For the reasons explained above, we do not find this argument persuasive. However, it is neither frivolous nor unreasonable. The other legitimate argument is that no jury instruction on disclaimer is necessary because the Goodspeeds had actual notice, through their real estate agent, that the implied warranty of habitability had been disclaimed. Again, while the argument is not the winning argument, it is neither unreasonable, frivolous, nor without foundation. Therefore, the Goodspeeds are not entitled to attorney fees on appeal pursuant to Idaho Code § 12-121.

## IV. CONCLUSION

We affirm the district court's order granting a new trial on the Goodspeeds' claim for breach of the implied warranty of habitability and its denial of the Shippens' request for attorney fees at trial. We award costs, but not attorney fees, on appeal to the Goodspeeds.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.